

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JAMES T. SULLIVAN ET AL., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 04 C 2736 |
| ) | |
| WILLIAM A RANDOLPH, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiffs' motion for summary judgment and motion to strike and on Defendant William A. Randolph, Inc.'s ("Randolph") motion for summary judgment. For the reasons stated below, we deny Plaintiffs' motion for summary judgment and their motion to strike and grant Randolph's motion for summary judgment.

## BACKGROUND

Plaintiffs allege that as of January 1, 2000, there was a collective bargaining agreement ("CBA") in effect between Randolph and its employees' union. Plaintiffs specifically contend that Randolph agreed to be bound by a CBA in 2000 ("2000 CBA") and another CBA in 2001 ("2001 CBA"). Plaintiffs further allege that,

1

pursuant to the CBAs, Randolph was obligated to make contributions into Plaintiffs' pension funds ("Funds") and that Randolph was obligated to permit the Funds to audit Randolph's books and records to assess Randolph's compliance with its contribution obligations. According to Plaintiffs, Randolph breached the CBAs by failing to make contributions to the Funds and by refusing to allow the Funds to audit Randolph's records. After the instant action was commenced, Randolph did allow an accounting firm hired by Plaintiffs to audit Randolph's records ("Audit") and the Audit report indicated that at least $30,997.76 was due to the Funds as of February 15, 2005. Plaintiffs brought the instant action alleging violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141 *et seq.*

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing

out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

### I. Motion to Strike and Local Rule 56.1

Plaintiffs move to strike ceratin affidavits provided by Randolph that questions among other things, the authenticity of certain related documents. Randolph, however, correctly points out that all of the concerns expressed in Plaintiffs' motion to strike should have been addressed by Plaintiffs during discovery. Plaintiffs cannot remedy their own lack of diligence during discovery by seeking to strike evidence

3

that Plaintiffs neglected to examine and investigate during discovery. Plaintiffs have not provided any sufficient justification that would warrant striking the affidavits and, therefore, we deny Plaintiffs' motion to strike.

In regard to Local Rule 56.1, Plaintiffs make a variety of evasive responses to Randolph's statement of material facts and, therefore, such facts are deemed undisputed. Pursuant to Local Rule 56.1, when a party files a motion for summary judgment, each party must prepare a statement of material facts and each party is required to respond to the opposing party's statement of material facts and either admit or deny each fact. A denial is improper if the denial is not accompanied by specific references to admissible evidence or at least evidence that represents admissible evidence. *Dent v. Bestfoods*, 2003 WL 22025008, at *1 n.1 (N.D. Ill. 2003); *Malec v. Sanford*, 191 F.R.D. 581, 585 (N.D. Ill. 2000)(stating in addition that "[t]he purpose of the 56.1 statement is to identify for the Court the evidence supporting a party's factual assertions in an organized manner: it is not intended as a forum for factual or legal argument"). Pursuant to Rule 56.1, any facts included in a party's statement of facts that are not properly denied by the opposing party are deemed to be admitted. Local Rule 56.1; *Dent*, 2003 WL 22025008, at *1 n.1; *see also Jankovich v. Exelon Corp.*, 2003 WL 260714, at *5 (N.D.Ill. 2003)(indicating that evasive denials that do not directly oppose an assertion are improper and thus the contested fact is deemed to be admitted pursuant to Local Rule 56.1). A court is not "obliged in our adversary system to scour the record looking for factual disputes and may adopt local rules reasonably designed to streamline the resolution of summary

judgment motions." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920, 922 (7th Cir. 1994)(stating in addition that a local rule pertaining to summary judgment "is more than a technicality"). Further, the 7th Circuit has held "that a district court is entitled to expect strict compliance with Rule 56.1." *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004)(stating in addition that "[s]ubstantial compliance is not strict compliance").

In the instant action, a variety of facts are apparently contested by Plaintiffs, but when the requirements of Local Rule 56.1 are applied, these facts are deemed undisputed. For example, Randolph asserts in its statement of fact paragraph 4 that Randolph has not employed covered employees since 1997 and did not employ covered employees during the Audit period. ( D SF 4). Plaintiffs respond by stating that the facts are disputed in part. In an effort to avoid the fact that Plaintiffs have no evidence to contradict Randolph's statement of fact, Plaintiffs simply make a facial challenge, without proper justification, to the evidence presented by Randolph.

II. Whether Randolph Was Bound by CBAs

Randolph argues that after 1997, when it made some contributions for two isolated months, Randolph was not a party to a CBA associated with Plaintiffs and in particular was not a party to the 2000 CBA or the 2001 CBA. Randolph argues that it is not obligated under either the 2000 CBA or the 2001 CBA. In fact Plaintiffs concede that Randolph is not a signatory on the 2000 CBA. Rather, Plaintiffs argue that Randolph impliedly joined the CBAs in light of its prior conduct. *See Moriarty*

*v. Larry G. Lewis Funeral Directors Ltd.*,150 F.3d 773, 777 (7th Cir.1998)(stating that the "general principles of contract law permit an employer to adopt a collective bargaining agreement by a course of conduct plus a writing such as the certification line on the contribution report; a signature at the bottom of the collective bargaining agreement itself is unnecessary"). Specifically, Plaintiffs point out that Randolph paid contributions to the Funds for work done in June and July of 1997. Randolph also points out that after 1997, Randolph continued to file monthly reports with the Funds for 2 ½ years prior to the Audit period and that Randolph attempted to formally terminate its participation in the CBAs on February 17, 2005.

We note also that Plaintiffs blatantly misstate the facts in this case in an effort to cloud the issues at hand. Plaintiffs argue that "[e]ven if there were no executed agreement covering 2000, which Defendant does not actually contend, Defendant would still be bound by virtue of having *paid contributions* and filed reports for 2 ½ years prior to 2000 and for the entire year 2000 *and for 3 ½ years thereafter.*" (Ans. D SJ 4)(emphasis added). Such a statement suggests that during 2000 and afterwards, Randolph filed monthly statements and made contributions for covered work done by members of the bargaining unit. However, a close examination of Plaintiffs' generalized statement reveals that it is in fact inaccurate. It is undisputed pursuant to Local Rule 56.1 that Randolph only employed members of the bargaining unit that were covered by the CBA during June and July of 1997, and that Randolph only made contributions during that period. Although Randolph admits to continuing to file monthly statements, Plaintiffs fail to mention that the statements

indicated that there was no activity requiring contributions. Randolph did not, as Plaintiffs suggest, employ covered employees for the five years after 1997 and submit contributions for such employees.

The fact is that such employees did not exist, a point that Plaintiffs avoid in this case and attempt to push into the background. Plaintiffs do not stand before the court seeking to vindicate the interests of specific Randolph employees whose pension plans are at risk because of inadequate contributions. The only covered employees that were employed by Randolph were employed for two months back in 1997. There are no allegations in the amended complaint that any specific employee of Randolph was wronged in regard to their pension benefits or put at a disadvantage because of work reassigned to subcontractors. Rather, Plaintiffs in their vigilant but misguided efforts to collect monies for the Funds seek to exploit the provisions of the CBA in order to extract payments from Randolph for the subcontractor work at issue. Plaintiffs' entire case is based upon mere technicalities such as the fact that Randolph continued to file monthly statements with the Funds after 1997. To the extent that Plaintiffs are pursuing the instant action under the terms of the CBAs, Plaintiffs are in theory seeking monies on behalf of fictitious covered employees that could have been employed by Randolph during the pertinent period.

Plaintiffs complain that Randolph has not provided them with sufficient evidence regarding Randolph's lack of participation in the CBAs, despite the fact that it is Plaintiffs who ultimately bear the burden of proof in this case. In this way, Plaintiffs are attempting to put the blame for this case on Randolph by indicating that if Randolph will provide Plaintiffs with sufficient documentation, Plaintiffs will "call

7

off the hounds" and halt the instant suit. (Ans. D SJ 3). However, under such an approach, Plaintiffs admittedly brought the instant action and continued to pursue the instant action after the Audit without any evidence showing any contribution violations. We fully recognize that "[o]nce a pension or welfare fund shows that an employer's records are deficient and produces an apparently sound accounting suggesting that money is owed, the employer could be obliged to explain why its payments to the funds are nonetheless proper." *Laborers' Pension Fund v. RES Environmental Services, Inc.*, 377 F.3d 735, 739 (7th Cir. 2004). However, Plaintiffs have not presented an accounting or other evidence that would allow a reasonable trier of fact to conclude that Randolph's records were inaccurate or that Randolph owes contributions. Also, as the court stated in *RES*, if the employer offers an explanation for its conduct and "the explanation appears to be sufficient, then the fund must demonstrate at trial its entitlement to additional payment." *Id.* Randolph has provided an adequate explanation by showing that it properly subcontracted out work in a manner that did not violate the CBAs and Plaintiffs have not presented sufficient evidence for a reasonable trier of fact to conclude that they are entitled to additional payment. As the Seventh Circuit explained in *RES*, a fund cannot simply blindly proceed in an action because "[o]therwise, in the absence of an explanation by the employer, the fund would prevail on summary judgment." *Id.* ERISA and the LMRA were intended to protect actual employees and were not intended to arm plans with a weapon so that plans could range far afield of the statutes' true goals in misguided attempts to harvest monies from employers to fill their coffers.

In regard to Randolph's course of conduct of making prior contributions for

two months and filing report statements, we do not agree that there is sufficient evidence for a reasonable trier of fact to conclude that Randolph intended to be bound by the 2000 CBA. *See Moriarty v. Glueckert Funeral Home, Ltd.*, 155 F.3d 859, 865 (7th Cir. 1998)(stating that the "test is whether the employer members of the group have indicated from the outset an unequivocal intention to be bound by group action in collective bargaining, and whether the union, being informed of the delegation of bargaining authority to the group, has assented and entered into negotiations with the group representative"). Plaintiffs make much of the fact that Randolph filed monthly statements with the Funds, but the statements clearly indicated that there was no CBA covered activity during those months. Plaintiffs also point out that Randolph attempted to formally terminate its participation in the CBAs. However, such a course by Randolph was taken after the instant litigation was initiated and clearly was merely a precautionary effort to take all necessary efforts to strengthen its position. Randolph did not concede by such conduct to its prior participation in the CBAs. Therefore, we conclude that there is insufficient evidence for a reasonable trier of fact to conclude that Randolph was bound by the 2000 CBA.

In regard to the 2001 CBA, Plaintiffs claim that Randolph assigned its Technical Engineering Union bargaining rights. However, Randolph clearly mistakenly authorized a representative entity to negotiate the terms of the 2001 CBA, which occurred merely through Randolph's membership in the Lake County Contractor's Association. It is undisputed that Randolph never saw a copy of the agreements at issue prior to the filing of the suit. (P R SF 31-34). To the extent that

Randolph's rights were assigned, the assignment was clearly inadvertent and there is no evidence showing Randolph's intent to be bound by the 2001 CBA.

III. Contributions for Subcontractor Work

Randolph argues that even if it was bound by the 2000 CBA and 2001 CBA, Randolph was not required to make contributions for the subcontractors that were identified in the audit. Pursuant to 29 U.S.C. § 1145 ("Section 1145"), "[e]very employer who is obligated to make contributions to a multi employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. Employers are required to make contributions under Section 1145 "only on behalf of those employees indicated by the agreements." *Central States, Southeast and Southwest Areas Pension Fund v. Hartlage Truck Serv., Inc.*, 991 F.2d 1357, 1360 (7th Cir. 1993). If a CBA is unambiguous regarding the category or categories of employees for which contributions are owed, the court must enforce the CBA provisions only and cannot require additional contributions. *Id.* at 1361. A CBA is deemed to be unambiguous "[i]f the language of such an agreement lends itself to one reasonable interpretation only. . . ." *Young v. North Drury Lane Productions, Inc.*, 80 F.3d 203, 205 (7th Cir. 1996).

In the instant action, Plaintiffs have not pointed to sufficient evidence that shows Randolph was required to make contributions to the Funds during the

10

pertinent period. The only work identified in the Audit for which contributions are allegedly owed was work done for Randolph by subcontractors. Under both the 2000 and 2001 CBAs, Randolph was allowed to subcontract out work. (2000 CBA Sec. 5; 2001 CBA Sec. 5). In regard to contributions, the 2000 CBA and the 2001 CBA provide in a clear and unequivocal manner that Randolph was required to make contributions "for each *employee and supervisor* covered under" the CBA. (2000 CBA; 2001 CBA)(emphasis added). In addition, under the 2000 CBA, Randolph was required to make contributions to the Safety Council "for each hour worked by all *employees* of the Employer covered by" the CBA. (2000 CBA Sec. 4.2)(emphasis added). In both the 2000 CBA and the 2001 CBA, the sections devoted to addressing subcontracting out work do not indicate that any contributions are owed to the Funds for the work of subcontractors. (2000 CBA, 2001 CBA). Plaintiffs admit pursuant to Local Rule 56.1 that no employees of Randolph were covered by the CBA during the Audit period. ( R SF 4). The auditor's report that is attached to Plaintiffs' amended complaint indicated that the hours in question that were identified in the Audit were hours performed by subcontractors rather than employees of Randolph. (A Compl. Ex. B). The CBAs are clear and unequivocal that Randolph was obligated to make contributions to the Funds for its employees and supervisors and nothing in the CBAs required contributions for work performed by subcontractors.

Plaintiffs argue that the hours performed by the subcontractors were covered under the CBAs and Randolph was required to make contributions for those hours. Plaintiffs contend that under the terms of the CBA, the work of subcontractors is

11

governed by the following provision:

*Contracting Out*

i. Employers reserve the right to contract out line and grade work and the Union recognizes this reservation and agrees not to interfere with the exercise thereof when outside the direct control of the Employer.
ii. The Employer reserves the right to contract out survey work and line and grade work to any licensed professional Engineer or Surveyor and all members of said survey crew shall also be licensed.

(Ans. D SJ 7). Plaintiffs also argue that the terms of Standard Agreement between The Construction Employers' Association and The Chicago & Cook County Building & Construction Trades Council Establishing the Joint Conference Board ("Standard Agreement") are incorporated into the CBAs, which further restrict Randolph's right to subcontract. We agree with Randolph that the terms of the Standard Agreement placing such severe restrictions on Randolph's ability to subcontract out work is entirely inconsistent with the intent expressed in the CBAs' provisions providing Randolph with subcontracting rights and the traditional right of management to subcontract out work. Plaintiffs have not shown that Randolph would be bound by the restrictions of the Standard Agreement, which was not signed by Randolph's representative.

In addition, even if Randolph is bound by the Standard Agreement and the above provisions, Plaintiffs have not pointed to sufficient evidence to support their claims. Plaintiffs argue that "Defendant presents no competent evidence that its subcontracting of covered work" complied with the above provisions. (Ans. D SJ 8). However, at the summary judgment stage it is Plaintiffs as non-movants that bear the

12

burden of showing that they have sufficient evidence to present to the trier of fact so that the trier of fact can rule on more than mere speculation. Plaintiffs thus improperly criticize Randolph for failing to present evidence regarding its subcontractor work, when it is Plaintiffs that bear the burden of producing evidence to support their claims. Although, as recognized above, the burden can at certain points shift to an employer, Plaintiffs have failed to present sufficient evidence to warrant a shift of the burden of proof. Plaintiffs contend, for example, that there is a legitimately disputed issue of fact as to whether the subcontracting work was done outside of Randolph's control, which would comply with the CBAs. (Ans SJ. 8). However, Plaintiffs fail to point to evidence to the contrary that shows that the pertinent subcontractors were performing work within Randolph's control in violation of the CBAs. (Ans SJ. 7-8)

The parties in this action have been allowed time to conduct discovery in the instant action, and Plaintiffs should have acquired all needed information to support their case during discovery. In the absence of evidence on such an issue, Plaintiffs cannot simply contend there are disputed facts, proceed to trial, and ask the trier of fact to engage in idle speculation. Plaintiffs fail to identify sufficient evidence to support their position and thus Plaintiffs are incorrect in their assertion that "at best it is a question of fact and at worst it entitles Plaintiffs to summary judgment." (Ans. D SJ 7). At best, in the absence of evidence, it is Randolph that is entitled to summary judgment. Similarly, Plaintiffs argue that although Randolph claims that it did not employ any covered employees during the period in question the fact "is not adequately supported by any testimony or evidence meeting the standards of Rule

13

56(e)." (Ans. D SJ 3). First, Plaintiffs in their typical "smoke-and-mirror" style have failed to offer any specific objection to any specific evidence presented by Randolph. Instead, Plaintiffs merely refer the court to other documents and other briefs. Second, as is indicated above, Randolph does not bear the burden of proof in this case. Third, although Plaintiffs apparently hint that they desire to contest the fact, Plaintiffs have expressly admitted that the fact as presented by Randolph is uncontested pursuant to Local Rule 56.1. Thus, it is completely ridiculous for Plaintiffs to hint that the issue of whether Randolph employed covered employees during the Audit period is unresolved and should be investigated at trial.

We also disagree with Plaintiffs' contentions that Randolph has not provided evidence that shows that the pertinent subcontractor work was not done in accordance with the CBAs. Randolph has presented such evidence to the court and Plaintiffs have not controverted such evidence. Again, in the face of such evidence, Plaintiffs attempt to avoid the termination of their case by claiming that there are disputed issues where none genuinely exist.

Plaintiffs also attempt to cover up the deficiencies in their case by contending that the "auditor specifically requested documentation regarding any developer or owner requirements that Randolph utilize particular contractors [sic]." (Ans D SJ 8). Plaintiffs also complain that the auditor requested certain documentation, "but Defendant produced nothing." (Ans D SJ 3). However, whether Randolph produced such information to the auditor is largely irrelevant. Plaintiffs could and should have sought such information from Randolph during discovery. The relevant question is

whether Randolph produced such information during discovery through formal discovery requests and whether the information indicated that the subcontracting of work was not proper under the CBAs. Yet, Plaintiffs fail to indicate that they ever formally requested such information from Randolph during discovery. (Ans D SJ 7-8). Even if Plaintiffs had requested such information during discovery and had obtained such information, Plaintiffs have failed to identify such matters to the court in their answer brief alongside their arguments on this point. (Ans. D SJ 7-8). It is not this court's obligation to do Plaintiffs' work for them and search for supporting evidence that might aid Plaintiffs' case. The Seventh Circuit has made it clear that when ruling on a summary judgment motion a court is not required to "scour the record looking for factual disputes." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994); *see also Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005)(indicating that a court is not obligated to "scour a record to locate evidence supporting a party's legal argument"). Plaintiffs must include more in their answer brief than unsupported conclusory statements and proclamations that there are disputed facts that bar a termination of this action. Therefore, we grant Randolph's motion for summary judgment and we deny Plaintiffs' motion for summary judgment.

## CONCLUSION

Based on the foregoing analysis, we grant Randolph's motion for summary judgment and deny Plaintiffs' motion for summary judgment. All other pending

15

motions are denied as moot.

							*[signature]*
							Samuel Der-Yeghiayan
							United States District Court Judge

Dated:   October 5, 2005