IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES T. SULLIVAN ET AL., | ) |
| Plaintiffs, | ) |
| v. | ) No. 04 C 2736 |
| WILLIAM A RANDOLPH, INC., | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiffs' motion for reconsideration of this court's October 5, 2005, order granting Defendant William A. Randolph, Inc.'s ("Randolph") motion for summary judgment and denying Plaintiffs' motion for summary judgment. For the reasons stated below, we deny the motion for reconsideration.

## BACKGROUND

Plaintiffs allege that as of January 1, 2000, there was a collective bargaining agreement ("CBA") in effect between Randolph and its employees' union. Plaintiffs specifically contend that Randolph agreed to be bound by a CBA in 2000 ("2000 CBA") and another CBA in 2001 ("2001 CBA"). Plaintiffs further allege that,

1

pursuant to the CBAs, Randolph was obligated to make contributions into Plaintiffs' pension funds ("Funds") and that Randolph was obligated to permit the administrators of the Funds to audit Randolph's books and records to assess Randolph's compliance with its contribution obligations. According to Plaintiffs, Randolph breached the CBAs by failing to make contributions to the Funds and by refusing to allow the Funds to audit Randolph's records. After the instant action was commenced, Randolph did allow an accounting firm hired by Plaintiffs to audit Randolph's records ("Audit") and the Audit report indicated that at least $30,997.76 was due to the Funds as of February 15, 2005. Plaintiffs brought the instant action alleging violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141 *et seq.* On October 5, 2005, we granted Randolph's motion for summary judgment and denied Plaintiffs' motion for summary judgment. Plaintiffs now seek a reconsideration of those rulings.

## LEGAL STANDARD

Federal Rule of Civil Procedure 59(e) ("Rule 59(e)") permits parties to file, within ten days of the entry of a judgment, a motion to alter or amend the judgment. Fed. R. Civ. P. 59(e). Rule 59(e) motions do not give a party the opportunity to rehash old arguments or to present new arguments or evidence "that could and should have been presented to the district court prior to the judgment." *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996)(citing *LB Credit Corp. v. Resolution Trust*

*Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995)). Rather, for a Rule 59(e) motion, the movant "must clearly establish either a manifest error of law or fact or must present newly discovered evidence" in order to be successful. *LB Credit Corp.*, 49 F.3d at 1267 (quoting *Federal Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986)). The decision of whether to grant or deny a motion brought pursuant to Rule 59(e) "is entrusted to the sound judgment of the district court. . . ." *In re Prince*, 85 F.3d 314, 324 (7th Cir. 1996).

## DISCUSSION

### I. Burden of Proof for Cross Motions

Plaintiffs first argue that the court erred by "requiring Plaintiffs to bear the burden of proof with respect to both cross-motions (Opinion at 7) while relieving Defendant of any burden of proof." (Mot. 2). However, the court made no such error. When ruling on cross-motions for summary judgment, the court must consider "the burden of proof that each party would bear on an issue of trial . . . ." *Santaella v. Metropolitan Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997).

Plaintiffs argue in the instant motion that they presented sufficient evidence to "shift the burden to Defendant to establish why its payment to Plaintiffs, or lack of payment in this case, was proper." (Mot. 3). Thus, Plaintiffs contend that the court should have determined that they presented sufficient evidence to shift the burden to Randolph. This argument is a perfect example of Plaintiffs' attempt in the instant

3

motion to conceal Plaintiffs' own mistakes during this litigation. Plaintiffs never made this argument in their motion for summary judgment or memorandum in support of the motion for summary judgment, and never contended that they presented sufficient evidence such that the burden should be shifted to Randolph. In Plaintiffs' motion for reconsideration, Plaintiffs cite *Laborers' Pension Fund v. RES Environmental Services, Inc.*, 377 F.3d 735 (7th Cir. 2004), and *Chicago Dist. Council of Carpenters Pension Fund v. Reinke Insulation Co.*, 347 F.3d 262, 264 (7th Cir. 2003) in support of their contention that the burden shifted to Randolph. (Mot. 3). However, even though Plaintiffs neglected in their motion for summary judgment to cite to *RES Environmental Services, Inc.* and *Reinke Insulation Co.*, the court was well aware of these holdings and properly applied them in ruling on the cross-motions for summary judgment. The court in its prior ruling even cited to *RES Environmental Services, Inc.* (10/05/05 OP 8.) In *RES Environmental Services, Inc.*, the court stated that "[a]n evidentiary burden is imposed on employers if a fund raises genuine questions about the accuracy of the employer's record-keeping practices." 377 F.3d at 739. In *Reinke Insulation Co.*, the court stated that "[w]hen an employer keeps substandard records-a good description of the green sheets-the court should presume that the auditor's calculations are correct and should shift the burden to the employer." 347 F.3d at 264. In the instant action, we are not faced with a dispute over amounts included in an accounting by a fund. There is not a contention by Randolph, for example, that its records of contribution are more accurate than Plaintiffs' records. Rather, Randolph is contending that it was not

4

required to make any contributions. Also, when ruling on the motion for summary judgment, we determined that even if the burden-shifting approach were to apply in the instant action, the court's ultimate ruling would not have been altered. Thus, contrary to Plaintiffs' contentions, when ruling on the parties' motions for summary judgment the court did consider the holdings of *RES Environmental Services, Inc.* and *Reinke Insulation Co.*

In the instant action, the court independently reviewed and analyzed each of the cross-motions for summary judgment in an exhaustive fashion. There is no requirement that the court provide an independent analysis or separate opinion for each cross-motion for summary judgment, or that the court identify every piece of evidence that was considered by the court. The court's prior ruling was clear and comprehensive. As is clear from the court's prior ruling, the court made no factual findings, and applied the proper legal standard to both motions for summary judgment. Plaintiffs have attempted in their motion for reconsideration to extrapolate additional conclusions from the court's prior ruling. Plaintiffs were also obligated to follow Local Rule 56.1 and Plaintiffs are responsible for any adverse results to Plaintiffs' case due to facts deemed undisputed under that rule.

Plaintiffs also complain that the court erred when it concluded that Plaintiffs' motion to strike the affidavits of certain individuals were moot because, according to Plaintiffs, the affidavits "go directly to the insufficiency of Defendant's 'evidence' . . . ." (Mot. 4). Plaintiffs misconstrue the court's ruling. By stating that the motions to strike were moot, the court did not, as Plaintiffs apparently contend, find that the

affidavits were irrelevant or that they did not support Randolph's case. Rather, in finding the motions moot, the court determined that even if the affidavits were stricken, the court's ultimate conclusions would remain unchanged. In making such a determination, the court avoided the unnecessary usage of judicial resources in forming the analysis of the motions to strike.

Plaintiffs also argue that because the court denied their motion for summary judgment, there must have been relevant factual issues that would require the case to proceed to trial. Plaintiffs cannot achieve a reprieve by such arguments. Based upon the record before the court, it was clear that there were no genuinely disputed material facts in this case and we determined as a mater of law that Plaintiffs could not prevail on their claims. Plaintiffs have failed to provide sufficient justification in their motion for reconsideration to alter that conclusion and yet Plaintiffs continue to insist that they are entitled to go to trial simply because the court denied Plaintiffs' motion for summary judgment. Plaintiffs attempt to compartmentalize their summary judgment motion, but fail to provide any logical reason why the court and the parties should waste resources with a trial if, based upon the undisputed evidence, Plaintiffs cannot prevail at trial before a reasonable trier of fact. To accept Plaintiffs' contention would mean that any party could avoid summary judgment against them by filing their own motion for summary judgment.

Plaintiffs have failed to show that the court made any error of law, much less a manifest error. Plaintiffs failed to support the contentions in their motion for summary judgment with sufficient evidence to create genuinely disputed material

facts. Plaintiffs also continue to rely on their bare-boned pleadings, which is inappropriate at the summary judgment stage. Also, many of Plaintiffs' arguments consist merely of Plaintiffs' dissatisfaction with the court's ruling, followed by a repetition of the same arguments and the same evidence already presented to the court with the motions for summary judgment. As is indicated above, a motion for reconsideration is not a proper vehicle to rehash arguments previously presented to the court. *Moro,* 91 F.3d at 876.

Finally, Plaintiffs argue that the court's "holding that the absence of evidence on an issue entitles Defendant to summary judgment herein (Opinion at 13) is error." (Mot. 4). First, Plaintiffs have not even ventured to allege that the court's supposed error was a manifest error of law and therefore Plaintiffs' motion for reconsideration is improper on that basis alone. Second, Plaintiffs have not shown that the court committed any error in respect to the above mentioned issue. Again, Plaintiffs attempt to sidestep key issues and focus on incorrect applications of the burdens for cross motions for summary judgment.

On page 13 of the court's prior ruling, which is cited by Plaintiffs, the court noted that Plaintiffs argued there is a legitimately disputed issue of fact as to whether the subcontracting work was done outside of Randolph's control, which would comply with the CBAs. (10/5/05 OP 13). The court also stated that Plaintiffs failed "to point to evidence to the contrary that shows that the pertinent subcontractors were performing work within Randolph's control in violation of the CBAs." (10/5/05 OP 13). The court properly noted that the parties have been allowed to conduct discovery to obtain necessary evidence and that "Plaintiffs cannot simply contend

7

that there are disputed facts, proceed to trial, and ask the trier of fact to engage in idle speculation." (10/5/05 OP 13). Plaintiffs have not shown any of the court's statements to be inaccurate. Thus, the court did not improperly apply the burdens of proof in this action for the cross-motions for summary judgment.

II. Alleged Admission by Randolph

Plaintiffs argue that the court erred by failing to acknowledge "Defendant's admission that as of January 1, 200, there was a CBA in effect between Union and Defendant." (Mot. 6). Plaintiffs, in attempting to find arguments for their motion for reconsideration, attribute admissions made by Randolph incorrectly. For instance, Plaintiffs state in a conclusory fashion that Randolph admitted that it is bound by the CBA. (Mot. 5). However, Randolph made no such admission. Plaintiffs point to paragraph 13 of their amended complaint, which states that "[a]s of January 1, 2000, there was in effect a collective bargaining agreement or agreements ("Agreements") between Union and Defendants, which Agreements were subsequently re-adopted from time to time. . . ." (A. Compl. Par. 13). However, nowhere in Randolph's answer did Randolph admit, as Plaintiffs contend, that Randolph was bound by the CBA. Randolph merely admitted certain facts, such as that it was a member of a collective bargaining agreement at one point. (Ans. A. Compl. Par. 13). Plaintiffs ignore the fact that Randolph specifically asserted that it was without sufficient knowledge to respond to portions of paragraph 13 of the amended complaint and Randolph also stated that it "denies that any of the alleged agreement(s) supports Plaintiffs' claimed allegations" and that Randolph "has not

8

employed any employees covered under the defined scope of the alleged agreements since at least July of 1997." (A. Compl. Par. 13). Thus, in the absence of an admission by Randolph that it is bound by the CBA and obligated to make the sought contributions, Plaintiffs are left relying upon Paragraph 13 of their amended complaint, which they cannot do at the summary judgment stage. Randolph correctly points out that all of the misdirection and diversions by Plaintiffs in their arguments cannot avoid the fact that the evidence clearly shows that there was not a binding CBA that obligated Randolph to pay contributions for subcontractors during the audit period. (10/5/05 OP). Thus, Plaintiffs complain about the court's "failure to acknowledge" Plaintiffs' perceived admission by Randolph concerning the CBA, but in fact there was no such admission by Randolph.

III. Significance of Randolph's Course of Conduct

Plaintiffs argue that the court erred by concluding that Randolph's payment of contributions and filing of monthly reports have little bearing on whether Randolph is bound by the CBA. Plaintiffs argue that this conclusion "contravenes established Seventh Circuit law pertaining to a contractor's adoption of the CBA through course of conduct, which is a separate and independent basis for Defendant's becoming bound to the CBA in this case." (Mot. 8). However, Plaintiffs misconstrue the court's prior ruling by presuming that the court ignored their arguments. The court did not state that the fact that Randolph made contributions and filed monthly reports was irrelevant. The court recognized that Plaintiffs had in fact argued in their briefs in support of their motion for summary judgment that Randolph's course of conduct

9

could be a basis upon which to hold Randolph accountable. The court considered all of the arguments and case law cited by Plaintiffs in the instant action. We even specifically noted in our prior ruling that Plaintiffs argued that Randolph may be found liable under the course of conduct theory. (10/5/05 OP 5-6). We concluded that the monthly reports and contributions made by Randolph were not sufficient to create a triable issue even under the course of conduct approach, and thus reports and contributions have little bearing in this case since they do not materially affect the outcome of the case.

Plaintiffs also once again presume that the court made certain unwritten conclusions in connection with its prior ruling. Plaintiffs claim in their motion that in regard to the course of conduct, "[t]he court may have been misled by Defendant's references to *Moriarty v. Glueckert Funeral Home, Ltd.*, 155 F.3d 859 (7th Cir. 1988). . . ." (Mot. 8). The court, however, was not misled by Randolph and instead reviewed *Moriarity* to properly determine its application to the instant action.

## IV. Evidence Supporting 2001 CBA

Plaintiffs argue that the court erred by concluding that there was not evidence showing Randolph's intent to be bound by the 2001 CBA. Plaintiffs fail in their motion for reconsideration to point to such evidence. Instead, Plaintiffs pile together a collection of tangential facts and evidence and argue that there is an underlying course of conduct that becomes apparent from such evidence. However, no reasonable trier of fact could agree. Plaintiffs cannot proceed before the trier of fact and ask the trier of fact to speculate, in the absence of sufficient evidence, that

Randolph intended to be bound by the 2001 CBA. The court thus did not err by concluding that there was not evidence showing Randolph's intent to be bound by the 2001 CBA.

V. Inadvertence and Mistake

Plaintiffs argue that the court erred by "relying on Defendant's alleged inadvertence or unilateral mistake in entering into the 2001 CBA as a defense to any liability under the 2001 CBA...." (Mot. 10). We note that Plaintiffs fail to cite to any portion of the court's ruling that included such a conclusion. Regardless, such defenses are viable defenses in regard to the LMRA, which is at issue in the instant action. *See, e.g., J.W. Peters, Inc. v. Bridge, Structural and Reinforcing Iron Workers, Local Union 1, AFL-CIO*, 398 F.3d 967, 973 (7th Cir. 2005). Thus, to the extent that the court considered any inadvertence or mistake by Randolph, the court did not err.

VI. Absence of Covered Employees

Plaintiffs argue that the court erred by noting the absence of covered employees during the audit period as a defense or as an aspect of a defense to Defendant's liability. Plaintiffs contend that the court "should not endorse the tactic or the argument that a contractor may enter into a CBA, subcontract out covered work in violation of the CBA's subcontracting strictures, then claim that it has no liability under the CBA because its employees did not perform covered work." (Mot. 11). The above quotation, has little application to the case at hand. Under

Plaintiffs' approach, if they were allowed to construe facts such as those in the instant case to apply their contention, Plaintiffs would be entitled to a windfall of collections from employers based upon mere technicalities, and would not need to show that such contributions were owed in fairness and equity. The undisputed evidence clearly shows that Randolph did not subcontract work out in violation of any CBA and that Randolph should not be forced to pay contributions to Plaintiffs. Thus, the court did not err by considering the fact that there was an absence of covered employees during the audit period.

## VII. Standard Agreement Limitation

Plaintiffs argue that the court erred by concluding that the Standard Agreement is not binding on Randolph. We concluded in our prior ruling that the terms of the Standard Agreement placing severe restrictions upon Randolph's ability to subcontract out work was entirely inconsistent with the intent expressed in the CBA's provisions providing Randolph with subcontracting rights. Plaintiffs make certain conclusory statements regarding the incorporation of the Standard Agreement into the CBA, but Plaintiffs fail to point to sufficient evidence that shows that the parties' intentions when forming the contracts were as Plaintiffs now contend. Plaintiffs also fail to recognize that the court provided additional reasoning showing that Plaintiffs could not prevail even if the Standard Agreement was binding upon Randolph. Thus, the court did not err by concluding that the Standard Agreement is not binding on Randolph.

## VIII. Denial of Discovery

Plaintiffs argue that the court erred by denying Plaintiffs certain discovery. In our prior ruling, we stated that it was improper for Plaintiffs at the summary judgment stage to attempt to fill in gaps in the facts by complaining that Randolph never gave them requested information. (10/5/05 OP 13). We pointed out that such matters should have been resolved in the course of discovery. (10/5/05 OP 13). Plaintiffs begin their argument in their motion for reconsideration by stating that their failure to obtain the necessary information during discovery should be excused because "the Federal Rules of Civil Procedure do not mandate a particular form or format of discovery." (Mot 12). This statement offers no justification for the shortcomings in Plaintiffs' presentation at the summary judgment stage. Plaintiffs, who are represented by counsel, should at the very least have been aware that the set discovery period was the time to gather evidence and to request it from the opposing party. Plaintiffs also should have been aware that the Federal Rules of Civil Procedure provides a mechanism for coming before the court and requesting that the court compel the other side to produce evidence.

We note that on November 23, 2004, the parties represented to the court that discovery had been completed. A minute order indicating that fact was issued by the court on November 23, 2004. Four months later, Randolph came before the court requesting that the court strike Plaintiffs' improper discovery requests. Since discovery had long since closed, we ruled that Plaintiffs' requests were improper. Plaintiffs now complain in the instant motion that "it is manifestly unjust to ignore Plaintiffs' efforts to obtain information." (Mot. 14). However, the court properly

13

ruled that Plaintiffs' discovery requests were improper. A motion for reconsideration is not a way for parties to undo all of the mistakes made during litigation. Plaintiffs claim that they were unable to obtain the necessary discovery, and that this failure was not due to their own fault. The record clearly indicates otherwise. Discovery had closed and if Plaintiffs needed additional discovery they should have raised that issue before the court in a timely fashion. Therefore, the court did not err in granting Randolph's motion to strike.

## CONCLUSION

Based on the foregoing analysis, we deny Plaintiffs' motion for reconsideration in its entirety.

*Samuel Der-Yeghiayan*

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: January 18, 2006