IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES T. SULLIVAN ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 04 C 2736 |
| | ) | |
| WILLIAM A RANDOLPH, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant William A. Randolph Inc.'s ("Randolph") motion for attorney's fees and costs. For the reasons stated below, we grant the motion in its entirety.

### BACKGROUND

Plaintiffs alleged in this action that there were certain collective bargaining agreements ("CBAs") in effect between Randolph and its employees' union. Plaintiffs further contended that, pursuant to the CBAs, Randolph was obligated to make contributions into Plaintiff pension funds ("Funds") and that Randolph was obligated to permit the Funds to audit Randolph's books and records to assess Randolph's compliance with its contribution obligations. According to Plaintiffs,

1

Randolph breached the CBAs by failing to make contributions to the Funds, by refusing to allow the Funds to audit Randolph's records, and by subcontracting out work in violation of the CBAs. On October 5, 2006, we granted Randolph's motion for summary judgment and denied Plaintiffs' motion for summary judgment. Randolph now seeks $55,667.00 for attorney's fees and costs pursuant to 29 U.S.C. § 1132(g)(1) ("Section 1132").

## LEGAL STANDARDS

Pursuant to Section 1132, "[i]n any action under [Section 1132] by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132 (g)(1). There exists a "'modest presumption' in favor of awarding fees to the prevailing party, but that presumption may be rebutted." *Herman v. Central States, Southeast and Southwest Areas Pension Fund*, 423 F.3d 684, 695-96 (7th Cir. 2005)(quoting *Harris Trust & Sav. Bank v. Provident Life & Accident Ins. Co.,* 57 F.3d 608, 617 (7th Cir. 1995)). There are two tests approved by the Seventh Circuit for determining whether to award fees to a prevailing defendant under Section 1132. *Id*. at 696. Under the first test, an award of damages should be denied if the "plaintiff's position was both 'substantially justified'-meaning something more than non-frivolous, but something less than meritorious-and taken in good faith, or if special circumstances make an award unjust." *Id*. Under the second test, the court makes a determination after considering the following factors:

2

> (1) the degree of the offending parties' culpability or bad faith; (2) the degree of the ability of the offending parties to satisfy personally an award of attorneys' fees; (3) whether or not an award of attorneys' fees would deter other persons acting under similar circumstances; (4) the amount of benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' positions.

*Id.* The ultimate issue that needs to be determined under either test has been defined by the Seventh Circuit as whether "the losing party's position [was] substantially justified and taken in good faith, or [whether] that party simply [was] out to harass its opponent[.]" *Id.* (quoting *Quinn v. Blue Cross & Blue Shield Ass'n,* 161 F.3d 472, 478 (7th Cir.1998)).

## DISCUSSION

I. Whether Fees Are Warranted

Randolph indicates, and Plaintiffs do not dispute, that after the court's prior ruling, Randolph sent a letter to Plaintiffs' counsel to attempt to set up a meeting regarding fees and costs, as is required under Local Rule 54.3. Randolph indicates that he received no response and forwarded a second letter in which he included a statement of the fees and costs that he was seeking to recover. After again receiving no response from Plaintiffs' counsel, Randolph brought the instant motion. Thus, Plaintiffs have refused to engage in the required discussions concerning the applicability of fees or the appropriate fee amounts.

3

We first note that there is no evidence that would indicate that Plaintiffs are financially unable to satisfy the fees and costs request. Also, an award of fees and costs will serve to deter Plaintiffs and other plans from putting employers such as Randolph through the expense of litigation to defend unjustifiable requests for contributions. Employees may also indirectly benefit from the savings incurred by employers. At the very least, the additional capital retained by the employer could contribute to the fiscal stability of the employer and thus to the stability of the jobs of the employees.

As we explained in our prior ruling, Plaintiffs alleged in the instant action that Randolph was bound by CBAs for the pertinent period in 2000, simply because Randolph had allegedly employed covered employees in 1997 and because Randolph continued to send monthly reports to the Funds. Plaintiffs acknowledged that Randolph was not even a signatory to one of the CBAs, but argued that Randolph was impliedly bound by the CBA in light of its conduct. Plaintiffs also contended that Randolph hired subcontractors in a fashion that violated the provisions of the CBAs.

We pointed out in our ruling granting Randolph's motion for summary judgment that Plaintiffs' arguments ignored the fact that there is no evidence that there were any covered employees employed by Randolph during the pertinent period. (OP 10/5/05 7, 11). Plaintiffs in fact admitted that fact in response to Randolph's Local Rule 56.1 statement of facts. ( R SF Par. 4). Plaintiffs' entire case was thus based on an alleged vindication of the rights of nonexistent covered

employees in light of the fact that Randolph did not employ any employees covered by the CBAs during the pertinent period. We also pointed out that even if Randolph was bound by the CBAs, Randolph clearly had not violated the provisions of the CBAs. (OP 10/5/05 10-14). The CBAs provided certain requirements for "employees" and also provided Randolph with the ability to subcontract out work. (OP 10/5/05 11-14). As we noted in our prior ruling, when Plaintiffs were confronted by Randolph's arguments pointing out the deficiencies in Plaintiffs' case, Plaintiffs avoided the issues by arguing that they did not receive certain information during discovery, despite the fact that they failed to file a motion to compel during the discovery period. (OP 10/5/05 13-15). Plaintiffs also made vague arguments alleging that there were disputed facts that warranted pressing onward to trial, despite the absence of evidence to support their case. (OP 10/5/05 12-15).

Such a strategy was consistent with Plaintiffs' course of action throughout this dispute. Plaintiffs initiated the instant action without substantial justification since Plaintiffs had no legitimate basis to conclude that Randolph was bound by the CBAs. After the filing of this action, Randolph allowed Plaintiffs' auditor to review Randolph's records, which revealed that contributions were not owed because the employees at issue were subcontractors hired by Randolph. Plaintiffs forced Randolph to incur expenses during discovery and the briefing of dispositive motions. Plaintiffs then pursued a motion for reconsideration that was entirely without merit. Finally, after the court's prior ruling, Plaintiffs refused to respond to Randolph's invitations to meet and discuss fees pursuant to Local Rule 54.3 and possibly resolve

any disputes concerning fees, forcing Randolph to incur further expenses in pursuing the instant motion. Plaintiffs even neglected to provide a direct response to the reasonableness of the fees requested by Randolph in their original answer brief, thus requiring the parties to incur the expense of filing supplemental briefs on the issue.

Plaintiffs argue that they cannot be found culpable for their conduct in this dispute and that there are special circumstances that make an award of fees unjust in this action because Plaintiffs are protecting the rights of employees which furthers the policies that underlie ERISA. However, ERISA defines the duties and obligations of both employee funds and employers. ERISA does not anoint employee funds with immunity to engage in any frivolous actions in pursuit of the interests of covered employees. *See Magin v. Monsanto Co.*, 2005 WL 83334, at *4 (N.D. Ill. 2005)(concluding that there are no special circumstances merely because the plaintiff was seeking to collect benefits from an employer under ERISA). Section 1132 makes clear that a court may award fees to either party in a benefits collections case and employee funds are encouraged to engage in their protection of covered employees in a responsible manner. 29 U.S.C. § 1132 (g)(1). The evidence in this case shows that Plaintiffs are entirely culpable for their conduct in this action. This conclusion is not contrary to the principles behind ERISA of protecting the rights of covered employees. As the court in *Magin*, 2005 WL 83334 stated, plaintiffs that act appropriately to recover benefits or contributions under ERISA "should have nothing to fear from this decision." *Id.* at *5. Thus, this decision is not contrary to the policies that underlie ERISA. Therefore, based on the above, we

6

conclude in our discretion that Plaintiffs' actions and positions in this litigation were not substantially justified and we find that Randolph should be awarded fees.

II. Amount of Fees

Randolph requests that the court award him $55,667.00 for attorney's fees and costs. The reasonable amount of recoverable attorney's fees is determined according to the "'lodestar' amount [which is] calculated by multiplying the number of hours the attorney reasonably expended on the litigation times a reasonable hourly rate." *Mathur v. Board of Tr. of Southern Illinois Univ.*, 317 F.3d 738, 742 (7th Cir. 2003). The party that is requesting fees bears the burden of proving that the hours and rates for the fees requested are reasonable. *Spegon v. Catholic Bishop of Chicago,* 175 F.3d 544, 550 (7th Cir. 1999). A reasonable hourly rate or market rate is defined as "the rate that lawyers of similar ability and experience in their community normally charge their paying clients for the type of work in question." *Magin v. Monsanto Co.*, 2005 WL 2171175, at *3 (N.D. Ill. 2005) (quoting *Harper v. City of Chicago Heights*, 223 F.3d 593, 604 (7th Cir. 2000))(stating in addition that "[e]vidence of 'market rate' includes rates other attorneys in the area charge paying clients for similar work, fee awards from prior cases, the attorney's credentials, and the attorney's actual billing rate")(citing *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1311-13 (7th Cir. 1996)).

In the instant action, Randolph has provided the court with documentation explaining how the lodestar amount of $55,667.00 was calculated. Randolph's attorneys provided detailed bills regarding their request for attorney's fees, including

7

affidavits describing the number of hours, hourly rates, education, and experience of the attorneys and paralegals handling this matter. Randolph also provided support for its contention that the "rates charged by Koehler & Passarelli, P.C. are actually below the market rate for the Chicago area for defending this matter." (Reply 5). As Randolph correctly notes, "Plaintiffs fail to cite to any case law or even facts to support their claim that the fees are unreasonable" or excessive. (Reply 2, 5); *see Spegon*, 175 F.3d at 554-55 (stating that "once the attorney provides evidence establishing his market rate, the burden shifts to the defendant to demonstrate why a lower rate should be awarded"). Instead, Plaintiffs merely raise vague arguments stating that the fees requested are unfounded and criticize Randolph for filings and legal research that were an ordinary and natural part of these proceedings. Plaintiffs contend that if "the Court awards anything at all, which it should not, significantly less than $21,811.50 should be awarded in light of the circumstances in this case." (Supp. Resp. 6). Plaintiffs have not provided any detailed calculations or explanation for their theory that the amount owed is "less than $21,811.50," or provided a precise figure that Plaintiffs believe is reasonable.

Plaintiffs also contend that Randolph agreed to reduce the amount of its fee request, but Randolph denies such an agreement and it is Randolph, the movant, not Plaintiffs that determines the requested fee amount. Another factor that shows that the fees requested by Randolph are reasonable is the evidence that Randolph paid its attorneys in full for the legal services rendered on its behalf in these proceedings. *See Magin*, 2005 WL 2171175, at *4 (finding "[t]he fact that a client is willing to pay [the requested rates] bolsters the finding that th[o]se rates represent the market rate").

8

Therefore, based on the above, we conclude that the requested amounts by Randolph are both recoverable and reasonable and we award Randolph the requested $55,667.00 in attorney's fees and costs.

## CONCLUSION

Based on the foregoing analysis, we grant Randolph's motion for fees and expenses in its entirety and award $55,667.00 to Randolph.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: June 19, 2006